# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
November 9, 2017

*In re* BIXLER, Minors.

No. 336162
Wayne Circuit Court
Family Division
LC No. 15-520596-NA

*In re* O. J. BIXLER, Minor.

No. 337906
Wayne Circuit Court
Family Division
LC No. 15-520596-NA

Before: MURRAY, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

The circuit court terminated respondent-mother's parental rights to her three young children in two separate orders—the first pertained to respondent's two older children and the second to her son born during the proceedings. Respondent contends that termination of her rights as to all three children was premature as she was not given an adequate opportunity to participate in and benefit from services. We affirm.

## I. BACKGROUND

Respondent is no stranger to the child protective system. She gave birth to a son, UB, in April 2011, at the age of 17. Three Child Protective Services (CPS) reports were made against the family, including once when UB was submerged under water in the bathtub for 15 seconds and stopped breathing. Respondent gave birth to her daughter, BB, on February 28, 2014. In January 2015, someone made another CPS report about the family. In April 2015, BB slipped in the bathtub, hit her heard, fractured her skull, and suffered a seizure. Respondent took BB to the emergency room but did not follow through with a neurologist as recommended. Then on August 19, 2015, BB received second and third-degree burns to her feet and ankles from scalding bath water. BB's treating physician suggested that the injury was caused by someone trying to place the child in a standing position in bathwater deep enough to reach the child's ankles. This was contrary to respondent's story that BB turned on the hot water while standing in the bathtub with the faucet running but the drain open.

-1-

The Department of Health and Human Services (DHHS) placed UB and BB in nonrelative foster care. The DHHS sought termination in the initial petition. Accordingly, services were not initially provided to defendant. Respondent was offered two hours of supervised parenting time each week. Respondent was also permitted to accompany the foster parents and BB to the child's many medical appointments. Respondent visited with her children but attended very few of BB's appointments.

On February 12, 2016, the court officially took jurisdiction over the children, but denied the termination petition and ordered services for respondent. The court indicated that it would allow respondent six months before it reconsidered termination. The court ordered respondent to secure suitable housing and employment. Respondent complied with those orders and found a two-bedroom apartment for herself and the children. She has worked throughout the proceedings as well.

The court ordered respondent to attend parenting classes. Respondent got off to a rocky start in this regard. She was terminated from one session for failure to attend. However, respondent ultimately completed parenting classes and the caseworkers noted improvement in her management of UB during parenting time sessions. Respondent continued to have difficulty managing BB's needs. BB's burns caused an array of physical development issues. She also exhibited cognitive development delays. Because respondent rarely attended BB's physical therapy and doctor appointments, she never learned how to properly assist her child.[1]

Respondent also entered an unhealthy romantic relationship. Her boyfriend declined to participate in services and therefore it was not a viable plan for respondent to regain custody and reside with him. The boyfriend joined respondent in her therapy sessions, preventing any discussion of possible domestic violence. Respondent eventually ended the relationship.

The larger issue respondent faced was substance abuse. Respondent denied having a substance abuse problem. Yet, she tested positive for marijuana on February 12, 2016. Throughout the proceedings, she missed the majority of her screens and tested positive for marijuana on other occasions. Respondent participated in substance abuse and mental health therapy with George Duncan. She lied to Duncan about her drug use, leading him to believe she was progressing toward reunification with her children. On September 12, 2016, respondent gave birth to her second son, OB. She later tested positive for cocaine. OB's meconium screen was positive for cocaine, methamphetamine, and amphetamine. Respondent had hid her pregnancy from the court and caseworker; she even lied in court when directly asked if she was pregnant. As a result of her continued drug use, the DHHS immediately took OB into care and placed him into nonrelative foster care. The DHHS again sought termination at the initial disposition. Following OB's birth, respondent completely stopped appearing for drug screens.

The court terminated respondent's rights to UB and BB on December 2, 2016. She later admitted to statutory grounds supporting termination of her rights to UB. The court conducted a

---

[1] By the September 23, 2016 hearing, respondent had attended only 9 full and two partial appointments out of 93.

best-interest hearing on March 27, 2017. Respondent was not present. Her attorney received a text message indicating that respondent was in the hospital due to a breathing issue. Counsel made several phone calls in an attempt to verify this information, but was unsuccessful. The court determined to proceed with the hearing in respondent's absence. As respondent still was not in compliance with her case service plan and had not visited her infant son in the past three months, the court determined that termination was in the child's best interests.

Respondent now appeals.

## II. ANALYSIS

### A. DOCKET NO. 336162

Respondent challenges the termination of her parental rights to UB and BB. The court based its decision on several grounds: MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury to the child or a sibling and "there is a reasonable likelihood" of future injury), (b)(*ii*) (failure to prevent physical injury), (c)(*i*) (conditions that led to adjudication persist), (c)(*ii*) (additional grounds for termination have arisen since adjudication), (g) (failure to provide proper care and custody), and (j) (child likely to suffer harm if returned to parent's care). Respondent generally contends that the evidence was insufficient to support termination on any ground because the court and the DHHS did not give her adequate time to benefit from her service plan.

Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). We review for clear error a circuit court's factual finding that the DHHS established a statutory termination ground. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

"In general, petitioner must make reasonable efforts to rectify conditions, to reunify families, and to avoid termination of parental rights." *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008). The lack of reasonable services affects the sufficiency of the evidence supporting the statutory grounds for termination. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). However, a respondent has a commensurate responsibility to participate in the services offered. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Even if a parent completed some services, the court may find grounds to terminate if the parent fails to "demonstrate sufficient compliance with or benefit from those services specifically targeted to address the primary basis for the adjudication . . . ." *Id*.

Despite that the court ordered only six months of services, the DHHS provided respondent services for 10 months before the court terminated her rights to UB and BB. During that time, respondent attended counseling geared toward ending her cycle of substance abuse. Respondent lied to her therapist about her progress and then denied her fabrications in court.

Respondent missed the majority of her drug screens, often tested positive for marijuana, and once tested positive for cocaine. She abused drugs during her pregnancy and OB was born with cocaine, methamphetamine, and amphetamine in his system. And on the eve of the termination hearing, respondent completely stopped participating in drug screens. Despite this history, respondent insisted at the termination hearing that she did not have an addiction problem.

Respondent also failed to attend BB's many doctor and rehabilitation appointments. BB had suffered a head injury in respondent's care that had lasting impact. BB's feet and ankles were also severely burned because of respondent's negligence. In order to properly care for BB, respondent had to learn how to assist her child in overcoming these injuries. Yet, respondent attended only 10% of BB's appointments. In the month preceding the termination hearing, respondent even stopped attending parenting time sessions. Because respondent never learned how to safely care for BB, she never earned unsupervised visits with her children.

After 10 months of services, respondent still could not admit her substance abuse problem. Although she learned skills to manage UB's defiance and anger issues, she did not know how to assist BB in her recovery. Respondent did not show sufficient benefit from the services provided and the circuit court did not err in terminating her rights to UB and BB.

### B. DOCKET NO. 337906

Following the court's termination of her parental rights to UB and BB, respondent admitted to statutory grounds for termination of her parental rights to infant OB. She also stopped visiting her child. Respondent then failed to appear for the best-interest hearing and her parental rights were terminated in her absence.

Respondent now contends that the court should have ordered services before terminating her rights and should have adjourned the best-interest hearing until she could be present. Reunification services are not always required. *In re Terry*, 240 Mich App 14, 25 n 4; 610 NW2d 563 (2000). The DHHS "is not required to provide reunification services when termination of parental rights is the agency's goal," *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009), as when termination is sought at the initial dispositional hearing. *Moss*, 301 Mich App at 90-92. The court may terminate a parent's rights at the initial disposition if jurisdiction is supported by a preponderance of the evidence and the DHHS presents legally admissible evidence supporting the termination ground. MCL 712A.2(b); MCR 3.977(E).

The circuit court terminated respondent's parental rights to her older two children only three months before it terminated her rights to OB. Over 10 months of services, respondent had shown very little progress in the main areas of concern—respondent's substance abuse and failure to learn how to safely parent her children. Accordingly, the DHHS sought termination of respondent's parental rights to OB in the initial petition. Given respondent's recent history, there simply was no ground to provide additional services geared directly at reunification with OB. We note, however, that the court granted respondent's request to participate in a Clinic for Child Study assessment. An assessment was scheduled and respondent failed to appear, just as she failed to attend any parenting time session with OB in the months leading up to termination. The DHHS offered respondent the opportunity to demonstrate her commitment and she failed to follow through.

The court's failure to adjourn the best-interest hearing also does not warrant relief. We review for an abuse of discretion a circuit court's decision to deny an adjournment. *In re Jackson*, 199 Mich App 22, 28; 501 NW2d 182 (1993). "Adjournments of trials or hearings in child protective proceedings should be granted only (1) for good cause, (2) after taking into consideration the best interests of the child, and (3) for as short a period of time as necessary." MCR 3.923(G). "[I]n order for a trial court to find good cause for an adjournment, 'a legally sufficient or substantial reason' must first be shown." *In re Utrera*, 281 Mich App 1, 11; 761 NW2d 253 (2008) (citation omitted).

Respondent's attorney received a text message before the hearing indicating that respondent had been hospitalized. He tried to verify this information with no success. The attorney told the court that he could not say whether respondent was "alive or dead or just out partying." The court gave an extensive explanation for its denial of respondent's adjournment request, including that respondent had failed to comply with any of the court's orders for services or visitation. It was clear that respondent had no intention of working towards reunification with her infant. Thus, there was no good cause to grant an adjournment and an adjournment would not be in the child's best interests.

Finally, respondent argues that the DHHS failed to present clear and convincing evidence to support the statutory grounds for termination. The DHHS need prove only one statutory ground for termination. *Trejo*, 462 Mich at 351. Respondent's parental rights to OB were terminated under MCL 712A.19b(3)(b)(*i*), (g), (i), and (j). Although respondent admitted these grounds, we will consider her claim of error. Clear and convincing evidence supported termination under all the cited grounds, but especially under factor (i). Termination under factor (i) is supported when the respondent's parental rights have been terminated to other children based on "serious and chronic neglect or physical . . . abuse, and prior attempts to rehabilitate [her] have been unsuccessful." Respondent's rights over UB and BB were terminated for precisely this reason.

We affirm.

/s/ Christopher M. Murray
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher